The Coüáí delivered the following opinion i-The plaintiffs in this court were complainants in the court below, upon an entry made the 9th day of June 1780, in these words, “ Josiah Huntsman enters 200 acres, upon a treasury warrant, on the middle fork of Licking, be *194 tween William Miller’s settlement, &c. and the creek, beginning at the mouth of a branch that Miller’s improvement is on, and to run down on the south side of the creek for quantity.”
A pre-emption entry which adjoins the fet tlemen fowhich it is appenda^ will take preference of an elder entry on a T. W. altho1 there were a fufficiency of vacant Jand to fatisfy the pre-emptionwarrant on the other tides of the-let-dement.
See Hughes's Rep. 131, 132.
This entry is deemed valid, and interferes with William Miller, the defendant, who claims under his preemption warrant, entered with the surveyor on the 4th day of December 1782, for 1000 acres, “ on a branch of the south fork of Licking, waters of Hinkston fork,joining his settlement, running down the creek, and on the south side for quantity.”
The Bourbon circuit court directed the manner of surveying the defendant’s settlement, and of the preemption adjoining thereunto, somewhat variant from the manner in which they had been carried into grant; but finding the whole of the complainant’s claim included within the defendant’s pre-emption claim, as directed to be surveyed, finally dismissed the bill.
The speciality of the defendant’s entry, or the notoriety of the objects therein called for, are not in question ; and the entry, when properly surveyed, will include all the land in controversy. So that only two questions remain :
First — Whether the defendant’s claim, at the date of the location, had lost the preference, and superiority of pre-emption ; but if not, then,
Secondly — Whether it could be entered on land previously located upon a treasury warrant, near to and on one side of the settlement, to which the pre-emption was appendant; but leaving vacant land on the other sides to satisfy the pre-emption.
The first question was spoken to by the counsel for the complainant, in part, as though the time for entering pre-emption warrants had been suffered to expire before the date of the defendant’s entry ; and afterwards revived by the legislature of Virginia ; whereas the time allowed by the act of 1779, had been enlarged and continued from time to time, without chasm. So that the argument on that branch of the cause, can be predicated only upon a supposed incompetency of the powers of that legislature to extend the time. That question, the court feel not the smallest hesitation in deciding affirmatively in favor of the powers of the legislature. As it respects the proper exercise of those powers between the *195 commonwealth of Virginia, and those to whom settlement and pre-emption rights were granted ; it may,be. remarked, that the situation of this district; remote from the capital; detached from the rest of Virginia by an extensive wilderness ; infested by an Indian enemy, which rendered communicatiou with the mother state very difficult and uncertain ; the harrassed and endangered state of this, then infant settlement, whose very extermination, was threatened by the savage foe ; called aloud upon the legislature to extend the time limited for obtaining pre-emption warrants, and entering them with the surveyor.
As it respects the justice of the measure, with regard ¾> holders of treasury warrants, it may be remarked, that they purchased.their warrants,subject to the reservations made in favor of pre-emptioners ; for whom certain portions of land, out of the general fund, had been reserved mb modo, because of services rendered, which the act of 1779 recognized as a consideration in part. If the terms held' out to the pre-emptioners had not been complied with, the land reserved for them might have returned to the general mass ; but the legislature have not chosen to insist rigidly upon those terms, so as to Work a forfeiture, but have extended the time for performance. In doing, this* they have not diminished the fund out of which the holders of treasury warrants purchased ; but only prevented the general fund, from receiving an accession. The legislature have not encroached upon the boundaries originally referred to, or transgressed the limits prescribed in the terms of sale to the purchaser of treasury warrants, but have acted only upon the reservations contained therein.
These observations are not produced by any doubt as to the powers of the legislature, but are intended to shew that a liberal construction should be given to their acts, in favor and in preservation of the rights of pre-emption.
The court is of opinion, that the defendant’s warrant; when located, had not lost its superiority and preference as a pre-emption. The nature and extent of that superiority, belong to the second question.
It has been contended that the right, of pre-emption is satisfied by leaving vacant land on one side of the settlement ; and that such was the fact in this case. The *196 impropriety of deciding upon the merits or demerits of claims collaterally brought into view, and held by those who are not parties or privies, and therefore not bound by the decision, is a sufficient answer to so much as regards the fact of vacancy; which, however, is not suggested in the bill, or otherwise affirmed than by the, complainant’s counsel in argument.
But if the vacancy were admitted, the right of preemption, as given by the law, excludes the idea of encroachment, otherwise than as subject to the risk that the choice, of the pre-emption might alight upon the same tract with that of the treasury warrant claimant ; and in such case, that the treasury warrant must yield.
The arguments used by the complainant’s counsel, tend rather to shew that the legislature might have offered better terms to purchasers of treasury warrants, than to explain what are the rights of pre-emption actually-reserved. PreTemption,that is to say, the right to buy in preference to others, was recognized in favor of a certain description of persons ; the quantity of the particular tracts which they should have the right to buy in preference to others, was defined; but the precise metes and bounds were left to be designated hy the pre-emp-tioners, in their future entries with the surveyor; with this restriction however, as to them, and as to notice to pthef purchasers ; that the land should be adjoining to that allowed them in “consideration of settlement.”Such were the terms held out to pre-emptioners ; such were the reservations made known to purchasers of treasury warrants.
The time allowed by law for entering pre-emption warrants, extended originally, and before enlargement, beyond the period at which the location of treasury warrants was to commence. In this interval, between the. opening of the land-office and the original limitation, the complainant’s entry was made ; so that the purchasers pf treasury rights, generally, and the complainant in par-ticula r, acquired their rights, subject to these terms of preference. He cannot then complain that he has been denied any benefit ofselection which he purchased; but his complaint is, that he has not been permitted to take first choice, (instead of second choice) to the exclusion pf those to whom he was informed at the time of his purchase the first choice belonged and was reserved. *197 The inconvenience to holders of treasury warrants re-suiting from being compelled to leave considerable quantities of land around the settlement claims, or of appropriating the whole, subject to the risk of being overreached as to 1000 acres by the pre-emption appendant, were considerations proper to be weighed by the legislature, and by the individuals who purchased and located treasury warrants. The court can only say ‘‘ ita lex scriptq est.” To give the right of pre-emption any other construction, would involve endless absurdities, perplexities and uncertainties, and would be contrary to the whole current of decisions, which have become settled rules of property.
It, therefore, seems to this court, that the right of the pre-emptioner was not to be curtailed, or restricted to one or more sides of his settlement, by the act of a treasury warrant holder, in locating such warrant upon one side of the settlement, although all the other sides might have been left vacant; but if he chose to approximate the settlement with his claim, he might do so ; but at the peril of having his treasury right overreached by the pre-emption appendant to such settlement,
Decree affirmed.